Lewis, Ch. J.,
delivered the opinion of the court. This *517 is an action of assumpsit on two promissory notes made by the defendant to the plaintiff.
The question arising on the pleadings is, shall the lex loci contractus govern, or shall it not ?
It is a well settled rule, that contracts, with a few exceptions, are to be construed according to the laws of that country, in reference to which they are made. But it is equally well settled, that the remedy on them must be prosecuted according to the laws of that country in which the remedy is sought. In the case of Duplein v De Eoven, the. cause of action arose in France; it was on a judgment obtained in that country. The defendant pleaded the statute of limitations, and held a good bar to the action.
In Lodge v. Phelps, decided in October term, 1799, it was held that though promissory notes, made in Connecticut, were not thére negotiable, they might be negotiated here, and a suit maintained on them in the name of the endorsee. For that the principle of the lex loci shall not affect the form of action, but shall have reference only to the nature and construction of the contract, and its legal effect; not to the mode of enforcing it.
In a much earlier case, viz. that of Page and Cable, decided in this court, in April term, 1795, the precise question now before us came under consideration. It was an action of assumpsit, on a promissory note made in Connecticut, by George Cable, to Jonathan Cable the defendant, and by him endorsed to David Page, the plaintiff. *The whole transaction took place in Connecticut. [*413] The plaintiff declared, first, under our statute, as endorsee ; secondly, on the endorsement as a speci al agreement; setting forth the contract as originating in Connecticut, and the defendant as guarantying the payment by George Cable, and on his default engaging to pay for him.
The defendant pleaded the statute of limitations of this state, and the plaintiff demurred, alleging for cause, that no such statute existed in Connecticut, where the cause of action arose.
*518 The court said; that the defendant having elected to prosecute his suit in this state, he must pursue his remedy agreeable to our law's, and that our courts could not dispense with an adherence to the requisites of time, place, and manner of commencing and prosecuting a suit, because the cause of action arose in another state. They conceived, that such adherence by no means impaired the obligation of the contract, and they gave judgment for the defendant. The correctness of those decisions I feel no disposition to controvert, but conceiving the law on the point as settled, we are of opinion judgment must be for the defendant, and with this opinion the Scotch and Dutch laws accord, as will appear from Erskine’s Institutes, vol. 2, 581, 582 ; Kaime’s Equity, vol. 2, 358 ; Huberi PrselectioneS, vol. 2, book 1, tit. 3 ; De Conflicto Legum, sec 7.[1]
Livingston, J.
No other question occurs-on this case than whether we are bound to enforce the limitation enacted' by a statute of our own state, or allow the plaintiff the same time as he would have had before a tribunal in Connecticut ?
*In the exposition of foreign contracts, courts take notice of the laws of the state in which they are made, or manifest injustice would ensue. This is a dictate of common sense, and is become a principle of general law. In suits on contracts made abroad, the parties in their pleadings must observe the forms of the country where the action is depending; but in deciding on the merits, the lex loci will be the rule. This distinction is found in the Roman and French law, and Emerigon speaks of it as adopted by all elementary writers.
“Pour tout ce qui concerne l’ordre judiciare, (or form of action,”) says that author, “on doit suivre l’usage du lieu ou l’on plaide, mais pour ce qui est de la decision du *519 fan, (or the merits,) on doit suivre, en regle generale, lea loix du lien ou le contrat a etc passe ex consuetudine ejus regioriis in qua negotium gestum.”
Another author on the same subject, holds, nearly the same language. In his quae respiciunt litis decisionem, sérvemela est consueiudo loci contractus. At in his quoe respiciunt litis ordinationem, attenditur consuetudo loci ubi causa agitur.
Emerigon also mentions an instance of a suit between two Englishmen in France in which the plaintiff insisted on proving by witnesses a paroi contract for a loan exceeding one hundred livres. The defendant pleaded an ordinance, resembling in some respects our “ Act for the prevention of frauds,” which required contracts of that amount tó be in writing, and no other proof was to be received of it but the instrument itself. The parliament -of Paris, however determined, that this being a valid contract in England, when it was made, the ordinance did not apply, t,.id the plaintiff recovered. “II fut juge, (says the autnor who reports this decision,) par le parlement de Paris, que l’crdonnance n’avait point lieu, d’autant qu’ elle va ad litis decú sionem” or to the gist of the action. Traite des Assurances, c. 4, s. 8.
On. a point of general law, where w& have no rule to the contrary, I cannot well err in conforming to one which we find adopted by a foreign tribunal, heretofore among *the most distinguished in Europe, for the [*415] purity and wisdom of its decimons; a necessary consequence of the great learning, integrity, and independence of its judges. But ¡he same rule, I conceive, prevails here. A note bearing ?. yearly interest of more than 7 per cent, if made abroad and lawful there, may be recovered here, notwithstanding our statute against usury. I see no reason why the same respect should not be paid to the limitation acts of another state. Our statute against usury is quite as imperative in avoiding the security, as that which prescribes the time after which a suit shall not be brought; yet courts have invented, or sanctioned, several *520 .exceptions, not within its provisions, to prevent a failure .of justice. Thus, an acknowledgment of the debt has defeated its operation, or arrested its course. Why, then, not regard an exception created by the parties themselves, which must be presumed to be the case whenever they contract, with a view to a different limitation ? ISTo violence is done to our law, by permitting .them to establish for themselves, a rule different from that which would take place in case of their silence. If the defendant had agreed in writing not to avail himself of the statute of limitations of this state, if the suit were commenced in seventeen years, a doubt can hardly be entertained of our giving effect to such an agreement. I perceive but little if any difference between a written contract of this kind, and a case in which the defendant must be presumed to have had in his eye, the laws of his own state, and, therefore, have virtually agreed to pay these notes, if sued within that period. To ■ leave his state, therefore, prior to that time, and then set up a defence in violation of his own engagement, and the understanding of the plaintiff, is an injustice which ought not to be suffered, if. without a breach of duty, we can prevent it. It may be said that if a party becomes a suitor with us, he must be bound by our laws. This is true, as it respects the form of action, or mode of obtaining the remedy. Courts will, and ought to adhere to their own forms, but in deciding on the merits of the demand, or defence, they do not derogate from their dignity, [*416] by enforcing the laws of the state where *the contract originated. The present defence is a perpetual bar to the action, and, therefore, involves in it the merits, and not a mere question of form.(a) If so, the laws *521 of Connecticut should be our guide, and not those of our own state. In foro consdentice, the plaintiff’s case is a clear one. The defendant, by his demurrer, admits, that if he had not come to this state, the plaintiff might and ought to have recovered. It would be matter of regret, if we were compelled to listen to as unjust a defence, considering the real understanding of those parties, as was ever obtruded upon a court of justice. It would not be easy to assign a reason why an obligation incurred in one state should be cancelled by either of the parties flying to another. We are not, in my opinion, under the necessity of establishing a principle or practice which may so easily be abused, and ' must always be followed by great injustice. So long as we are at liberty to expound contracts lege bd, it is our duty to discountenance a defence, which in such country would not be allowed. When the defendant left Connecticut, the plaintiff had a good cause of action against him, which ought not to be defeated by his own act, in coming among us. I think, therefore, that as this defence has nothing to do *522 with the form of action but strikes at the plaintiff’s right to recover at all, we should apply to this case the limitation act of Connecticut, and that as seventeen years have not run since these notes were made, the plaintiff should have judgment.
Judgment for the defendant.

 See Benjamin v. LeGroot, 1 Denio, 157; Bandall v. Willcins, 4 Denio, 577; Fowler v. Bunt, 10 J. R. 464; Lincoln v. Battelle, 6 Wend. 475; Bugglu v. Keeler, 3 <T. R, 263.

 With deference to the bench by whom the decision in this case was pronounced, there does seem great force in the reasoning of the learned judge who dissented from them. If the exposition of a personal contract is to be governed by the law of the country where made, unless entered into with a view to that of another state; if, as we have determined, in Thompson v. Ketcham. 8 Johns. Rep. 189, the time of payment is, by judgment of law, *521 a part of the original contract, why is not the time of prescription, as declared by the law, equally a part of the original contract? If it be so, is it not of the essence of the contract, according to the exposition which the law would give in Connecticut, that a prescription of less than 14 years shall not be set up against a promissory note ? When we make six years a bar, is it not to expound the contract according to our law, and not according to that of the country where the instrument was made? To a foreign bond we cannot plead our statute of usury; because we do not admit of a defence on the merits, which the law of the country where the deed was executed would not allow. The lex fori knows not of any bar to the right, which does not exist by the lex loci contractus. On this very principle we have disallowed, in the case cited above, a. plea of infancy to a note, because not shown to be a good defence where the note was made. Where is the difference between a bar from infancy, a bar under the statute of usury, and a bar under the statute of limitations ? Do they not all go to the action, and not to the form of the action ? The doctrine of t,he lex fori would apply, if on promissory notes the action of covenant were used in Connecticut, and the same form were attempted in a suit in our courts. A late decision has, however, fully adopted the law of the case in the text. It has been ruled that the statute of limitations is a good plea in bar to an action on a judgment in another state. Hubbell v. Cowdry, 5 Johns. Rep. 132. See also Ruggles v. Keeler, 8 Johns. Rep. 263.