## Case No. 8,269.

### LE ROY et al. v. CROWNINSHIELD.

[2 Mason, 151.] [1]

Circuit Court, D. Massachusetts. Oct. Term. 1820.

CONFLICT OF LAWS—STATUTE OF LIMITATIONS—
LEX LOCI CONTRACTUS—LEX FORI.

A plea of the statute of limitations of the state, where a contract is made, is no bar to a suit brought in a foreign tribunal to enforce that contract. But a plea of the statute of limitations of the state, where the suit is brought, is a good bar. Principles of the lex fori discussed and examined.

[Cited in M'Elmoyle v. Cohen, 13 Pet. (38 U. S.) 327; Egberts v. Dibble, Case No. 4,307; Cook v. Moffat, 5 How. (46 U. S.) 315; Tufts v. Tufts, Case No. 14,233; Townsend v. Jemison, 9 How. (50 U. S.) 413; Davidson v. Smith, Case No. 3,608; Campbell v. Holt, 115 U. S. 626, 6 Sup. Ct. 212; Canadian Pac. Ry. Co. v. Johnston, 9 C. C. A. 587, 61 Fed. 745.]

[Cited in Bulger v. Roche, 11 Pick. 38; Reed v. Northfield, 30 Mass. 99; Varnum v. Camp, 1 Green [13 N. J. Law] 331; Hunt v. Fay, 7 Vt. 179; Dudley v. Kimball, 17 N. H. 500. Cited in brief in Hunt v. Gookin, 6 Vt. 469; Briggs v Hubbard, 19 Vt. 88; Leavitt v. Palmer, 3 N. Y. 28. Applied in Hale v. Lawrence, 1 Zab. [21 N. J. Law] 742. Cited in Paine v. Drew, 44 N. H. 319; Guillander v. Howell, 35 N. Y. 659; Kidder v. Tufts, 48 N. H. 125. Distinguished in Van Dorn v. Bodley, 38 Ind. 418. Cited in brief in Carson v. Hunter, 46 Mo. 467; McMerty v. Morrison, 62 Mo. 141. Cited in Perkins v. Guy, 55 Miss. 153; Chapin v. Freeland, 142 Mass. 390, 8 N. E. 128.]

[See Ames v. Le Rue, Case No. 327.]

Assumpsit with the common money counts. The defendant [Richard Crowinshield,] pleaded in bar of the action the statute of limitations of the state of New-York, where the

---

[1] [Reported by William P. Mason, Esq.]

contract was made, to which the plaintiffs [Harmon Le Roy and others,] demurred.

J. Pickering, for plaintiffs.

The question raised in the present case, is whether the limitation act of the state, where a contract is made, shall govern the decision of this court, sitting in another state, in which judicial proceedings are instituted for the purpose of enforcing the contract. The plaintiffs had supposed, that this general question had been already settled, if not in England, at least in the United States, both by the supreme court of New-York and of Massachusetts, of which states the present parties were respectively inhabitants; and consequently, that so far as this court should feel itself obliged to consider the several courts of those states to be expositors of their own laws agreeably to the law of the United States respecting the federal court, so far it would feel itself under the necessity of considering the question as no longer open. The adjudged cases alluded to are familiar to the court. Pearsall v. Dwight in this state, 2 Mass. 84; and Ruggles v. Keeler, in the state of New-York, 3 Johns. 263; the latter of which is the more important, because it is a re-examination of the question, which had already been before the same court in the case of Nash v. Tupper, 1 Caines, 402. It is suggested, however, that the present case may be distinguished from those. It is therefore necessary to examine the grounds and extent of these and some other decisions on this subject. The mutual necessities of the different states, which constitute the community of Europe, (in which community the United States are, practically speaking, included) have given rise to the well known rule, which is stated by this court in the learned opinion given in the case of Van Reimsdyk v. Kane [Case No. 16,871], "that the law of the place, where a contract is made, is to govern, as to the nature, validity and construction of a contract." The numerous authorities on this point have been collected with much care and research in the case just cited; and an examination of those cases in the order of their adjudication will show how strictly and uniformly the rule has been followed by the courts in England and the United States for a century past. Such is the established general rule in respect to the contract itself, as adopted among all those nations, who acknowledge the same code of international law with ourselves. But as the court justly observe in the case last mentioned, "in respect to the form of the action or the remedy, by which a contract is to be enforced, a different rule prevails, and it seems on all sides conceded, that the recovery must be sought and the remedy pursued not according to the lex loci contractus, but according to the lex fori. The only question, which seems to have arisen is, whether a bar, good by the law of the place, where the suit is brought, and not where the contract originated, and conversely a bar good by the law of

the place, where the contract was made, and not where the suit was brought, should fall within the rule as to the validity or as to the remedy of the contract. The current of authority is certainly in favour of the latter construction, where the bar has been a prescription or statute of limitations. In order to have a more distinct view of the principles on which the two rules respecting the contract and the remedy are founded, and to determine, whether any solid distinction can be taken between the present and preceding cases, it may be necessary to consider very briefly some of the classes of cases relative to this point.

1st. A very large and important class of cases consists of those under the bankrupt laws, properly so called, by which both the person and the property of the debtor are released from all liability whatever in the country, where he obtains his discharge. These discharges are respected by foreign nations, as well as by the courts of the nation, where they are granted. In respect to the effect of such discharges it will be sufficient to refer to the following English and American cases. Ballantine v. Golding, Coke Bankr. Law, 515; Hunter v. Potts, 4 Term R. 182; Quin v. Keefe, 2 H. Bl. 553; Smith v. Buchanan, 1 East, 6; Potter v. Brown, 5 East, 124; Emory v. Greenough [Case No. 4,471]; Smith v. Smith, 2 Johns. 235; Van Reimsdyk v. Kane [supra]; Blanchard v. Russell, 13 Mass. 1; Bradford v. Farrand, Id. 18; Walsh v. Farrand, Id. 19; Hicks v. Brown, 12 Johns. 142.

2d. Another class of cases comprises those, which have arisen under the laws denominated insolvent laws, which discharge the person of the debtor and not his property, like the cessio bonorum of the civil law; in other words, which do not in any way extinguish or satisfy the debt itself. Ex parte Burton, 1 Atk. 255, is a leading English case on this point. In our own courts there have also been several decisions, among which are the following: Proctor v. Moore, 1 Mass. 198; Baker v. Wheaton, 5 Mass. 509; Watson v. Bourne, 10 Mass. 337; Blanchard v. Russell, 13 Mass. 1; Wright v. Paton, 10 Johns. 300. These are some of the principal cases under the bankrupt and insolvent laws; and from an examination of the grounds of them it will appear that whenever the contract was actually made, or was to be executed, within the jurisdiction of which both parties were inhabitants, a discharge duly obtained under the bankrupt laws has been considered as a satisfaction or extinction of the debt, and a bar to any action, and it will be accordingly respected by the courts of foreign countries. And that on the other hand, where a discharge does not so extinguish the debt, or the right, as in the case of insolvent laws, the cessio bonorum, &c. but only bars the remedy, the discharge will not be held by foreign states to be a bar to judicial proceedings upon such contract. The cases cited thus far all relate to the effect of the contract itself in foreign coun-

tries. But it is necessary further to consider, when the contract shall be held to be legally barred or extinguished, or cannot be carried into effect consistently with the laws of the country, in which it is attempted to be executed; or what remedies lie for enforcing it in another country than that, where it was made.

The general rule, as this court has observed, in the case of Van Reimsdyk v. Kane, is that the remedy is to be pursued according to the laws of the country, where the action is brought. The authorities on this point may be arranged in two classes: 1st. Those which relate to remedies generally. 2d. Those which relate to the effect of limitation acts specifically.

A principal case in the first of these classes is Imlay v. Ellefsen, 2 East, 453, in which Lord Ellenborough departed from the doctrine held by the court of common pleas in another case, Melan v. Duke of Fitzjames, 1 Bos. & P. 138, in such decided terms, that the counsel abandoned the point he was attempting to support by that case. From the manner, in which that case is treated by the court of king's bench, it is evident that the English tribunals still adhere to the general rule followed by other nations, that the remedy must be pursued according to the lex fori. The case in question has also been considered as a departure from settled principles by a learned court in our own country, and in the state, where both the present parties were domiciled, in the case of Smith v. Spinola, 2 Johns. 198, which has a close analogy to the case at bar. Other English cases on this point are Maule v. Murray, 7 Term R. 470; Pedder v. MacMaster, 8 Term R. 609. The principal cases in our own country are the following, which are in conformity with the English decisions. James v. Allen, 2 Dall. [2 U. S.] 188; Harris v. Mandeville, Id. 256; Sicard v. Whale, 11 Johns. 194.

3d. Statutes of limitation. The remaining class of cases consists of those, in which the particular bar set up in the present action has come under consideration. And it will be found, that the decisions on this point have been in conformity with the general principles established by the preceding cases in relation to the remedy in general. The important case of Williams v. Jones, 13 East, 439, deserves particular attention, on account of its being a very late one, as well as from the high authority of Lord Ellenborough and the other judges who decided it. The decisions in our own courts, relative to the statute of limitations, have been in conformity with the doctrine laid down in the court of king's bench. From a review of the cases it will appear, that there is an established distinction between what are called "rights" and "remedies." This distinction may, it is true, in some cases be difficult to define; but when the court have once decided, to which of these two any question is to be referred, there can no longer be any doubt as to the rule, that

must govern its decisions. It does appear clearly from the same cases, that statutes of limitation are universally held to be only an extinction of the remedy, and not of the right.

Upon a review of the whole question, there can be no reason why this court, sitting either as a tribunal, to administer justice according to the general law of nations, or of that part of public law, which is called the "law merchant," or sitting as a court to administer justice between citizens of our own state, according to the laws of their respective states, ought not in the present case to determine, that the limitation act in question is not a sufficient bar to the plaintiff's action.

Prescott, Blake & Webster, for defendant.

STORY, Circuit Justice. This cause was argued in the fullest manner at the last term, and has been held under advisement until the present time, principally from my desire to ascertain upon a review of all the authorities, whether the question raised at the argument was now open for discussion. I have examined all the authorities cited at the bar, (some of which are sufficiently obnoxious to critical commentaries), and if I thought there could be any utility in the task, I should not shrink from the labor of giving them a minute review. But after the ingenuity and learning of the profession have for a half century been exhausted upon the general subject, it would be rashness to expect to throw any new light upon it. In proof of the general principles, therefore, which I shall have occasion to state, I shall content myself with a general reference to the cases cited at the bar, and to those, which on a former occasion it became my duty to examine and compare. Van Reimsdyk v. Kane [Case No. 16,871]. I shall comment particularly on those only, which press directly on the point now in judgment.

Some doctrines are so well established, that it would be a mere waste of time to attempt to defend them. It is, for instance, a principle of public law perfectly beyond the reach of judicial controversy, that personal contracts are to have the same validity, interpretation and obligatory force in every other country, which they have in the country where they are made, or are to be executed. The convenience, nay, the necessities of the civilized and commercial world, rendered it indispensable, that this principle should be adopted in the earliest rational intercourse; and it would not be easy to trace a period, when it was not tacitly adopted as a pledge of public as well as private confidence. An exception coeval with the rule itself, and resting on the same foundation, is, that no nation is bound to enforce or hold valid any contract, which is injurious to its own rights or those of its citizens, or which offends public morals, or violates the public faith.

Another rule equally well settled is, that remedies on contracts are to be regulated and

pursued according to the law of the place, where the action is instituted, and not by the law of the place, where the contract is made. The reason of this rule is extremely obvious. Courts of law are instituted by every nation for its own convenience and benefit, and the nature of the remedies, and the time and manner of the proceedings, are regulated by its own views of justice and propriety, and fashioned by its own wants and customs. It is not obliged to depart from its own notions of judicial order, from mere comity to any foreign nation. It is sufficient, if it gives to foreigners the same means to enforce their rights, as it does to its own citizens. In the emphatic language of Mr. Chancellor Kent, I may say, what shall be the course of its judicial proceedings and the limitations of its process, its prescriptions and its exceptions, are "questions of municipal convenience and public utility, which every government has not only a right to consult, but is bound in duty to promote." Deconche v. Savetier, 3 Johns. Ch. 190, 218. There is no hardship or injustice in refusing to foreigners remedies, which do not belong to the genius of the government or its laws, or to repel proceedings or process from its courts, which it does not choose to entertain in cases of domestic litigation. There would be danger as well as inconvenience in a different course; and if it were to produce no other ill effect than the necessary consumption of time in attempting to learn a strange and novel jurisprudence, it would be a sufficient public mischief to justify the rejection of it. In many cases indeed the form of the remedy is perfectly immaterial. The same contract, which at Rome demanded a condictio indebiti or an actio certi, might well sustain an action of assumpsit or bill in equity in England, a suit by petition in France, or an action of debt in some parts of our own country; and each remedy might well be deemed a satisfactory redress. And even where the remedy is more intimately connected with the right, as in the process of execution, there is no absolute reason, why a nation should either by arrest of person or property give more prompt efficiency to a contract, than its own citizens can claim, or its general laws justify.

To another position (which is but a corollary, from what has been already stated) I also unhesitatingly accede, and that is, that as the lex fori ought to regulate the remedy, so the party, who seeks that remedy, must bring himself within the prescription, that limits it, and if he does not, that the prescription is not merely a legal but a just bar to his suit. A question, may very naturally arise, whether the prescription, within the intent of the statute, applies to foreign contracts; because as Lord Kaimes justly observes, "many cases come under the words of a statute, that are not comprehended under its spirit and intendment." But when this is undisputed, the conclusion, to which his lordship comes, seems irresistible, "that every case that comes under our law must be decided by that law, and not by the law of any other country." Kaimes, Prin. Eq. p. 364, § 6; Ersk. Inst. bk. 3, p. 633, tit. 7, § 48. The earliest case to be found on this point in the English courts is Dupleix v. De Roven, 2 Vern. 540, where to a bill for a discovery of assets and satisfaction of the plaintiff's debt, which was contracted in Rome, the English statute of limitations was pleaded, and by the lord keeper was allowed as a good bar, and again upon a re-hearing the decree was confirmed. Id. 541; Raithby's Note 3. The doctrine recognized by this case has never since been departed from in England; it has been recognized in the most solemn manner in the state and federal courts in the United States; and though civilians have differed respecting it, it stands approved by the concurrent testimony of the ablest of foreign jurists and courts. Williams v. Jones, 13 East, 439; Nash v. Tupper, 1 Caines, 402; Hubbell v. Cowdrey, 5 Johns. 132; Pearsall v. Dwight, 2 Mass. 84; 1 Emerig. Ass. p. 120, c. 4, § 8; Huberus, De Conflictu Legum, tom. 2, lib. 1, p. 538, tit. 3; Voet ad Pand. lib. 44, p. 877, tit. 3, § 12, tom. 2; Casaregis, Disc. 129, § 58; Id. p. 130, § 33; Ersk. Inst. p. 633, § 48; Kaimes, Eq. p. 363, § 6. Nor was it the intention of the court in the remark cited at the bar from the case of Van Reimsdyk v. Kane [Case No. 16,871], to question the propriety of those decisions, so far as they gave effect to the law of prescription of the place, where the suit was instituted, but merely to state historically the point of debate, and to intimate a doubt, whether the repelling of the foreign prescription in such a case fell within the principle, on which the former was justly founded. This is the very point now in controversy, and to the consideration of it the attention of the court will now be directed.

It is agreed by the demurrer, that the original contract in this case was made, and the cause of action accrued, in New-York, between the parties to the suit, who were then citizens of that state, and that the statute of limitations of that state would be a good bar to the suit, if now brought in any court of that state. In the language of the civil law this temporal prescription would be a sufficient exception to repel the suit. It is not stated in the plea, that the cause of action had accrued more than six years before the defendant ceased to be a citizen of New York, so that the statute would have completely run against the plaintiff and extinguished his remedy there, which would certainly have presented a much stronger case, and of more serious difficulty. And the question, therefore, is, whether the statute of limitations of New-York can now be pleaded in this court as a good bar or defence to the suit.

In considering this question it is material to observe, that it is not a case, where the remedy is partially taken away, and partially remains, as where it is extinguished

as to the person, and retained as to the future effects of the debtor. Such are cases arising under insolvent laws of our own and foreign states, which discharge the debtor from imprisonment, but leave the contract with its full obligation upon his future estate. Such also is the effect of the cessio bonorum of the civil law, and of analogous proceedings of most foreign countries deriving their jurisprudence from the civil law. 1 Domat. lib. 4, p. 495, tit. 5, § 1; Heineccius ad Pand. pars. vi. § 252; 3 Huber. lib. 42, p. 1453, tit. 3; Voet ad Pand. lib. 42, p. 799, tit. 3, § 8; Ersk. Inst. bk. 4, tit. 3, §§ 26, 27; Code de Commerce, lib. 3, tit. 2, art. 568; Poth. Pand. tom. 3, lib. 42, p. 175, tit. 3, § 2; Bruni de Cessione Bonorum. Quest. 3, Straccha. 868. In this class of cases it has been uniformly decided, that as the discharge does not touch the right under the contract, but merely removes one local remedy, leaving all others in force, there is no ground to relieve the defendant from the effect of any process issuing according to the law of any foreign country, where he may be sued. Some of the cases cited at the bar turned upon this distinction. Wright v. Paton, 10 Johns. 300; James v. Allen, 1 Dall. [1 U. S.] 188; White v. Canfield, 7 Johns. 117; Sicard v. Whale, 11 Johns. 194; Peck v. Hozier, 14 Johns. 346. The doctrine, that a remedy against the person may well be maintained upon a contract in a foreign forum, although it would be denied in the place where the contract is made, stands upon analogous reasoning. It was attempted to be shaken in the case of Melan v. Fitzjames, 1 Bos. & P. 138, where circumstances of hardship seemed to have had great influence with the court; but that case stands alone, and the general doctrine is now unequivocally established. Imlay v. Ellefsen, 2 East, 455.

It must be admitted as a general proposition, that the laws of one country cannot in themselves have any extra territorial force; and whatever force they are permitted to have in foreign countries must depend upon the comity of nations, regulated by a sense of their own interests and public convenience. Green v. Sarmiento [Case No. 5,760]; Kaimes, Prin. Eq. bk. 3, pp. 363, 364, § 6; Caseregis, Disc. 130; 2 Hub. lib. 1, tit. 3; De Conflectu Legum, §§ 2, 3. But the same reasons, which have conduced to the establishment of the rule, that personal contracts shall have the same validity in every other country, as in that where made, have ingrafted upon that another rule, that the same law, which creates the charge, is to be regarded, if it operate a discharge of the contract. Green v. Sarmiento [supra]; Kaimes, Prin. Eq. bk. 3, pp. 360, 364, § 6. From the very terms of these rules, it necessarily follows, that they exclude all cases, where the discharge set up is derived from the local laws of a state, where the contract was not made. Hence it has been held, that a discharge from the debt under the bankrupt laws of the place of the contract is good in every other place, when pleaded as an extinction of the debt. Ballantine v. Golden, Coke, Bankr. Law (6th Ed.) 500; Smith v. Buchanan, 1 East, 6; Potter v. Brown, 5 East, 124; Hunter v. Potts, 4 Term R. 182; Emory v. Greenough [Case No. 4,471]; Smith v. Smith, 2 Johns. 235. And on the other hand, that a like discharge under the laws of any place, where the contract was not made, cannot be so pleaded in the tribunals of any other nation. Bradford v. Farrand, 13 Mass. 18; Hicks v. Brown, 12 Johns. 142; Quin v. Keefe, 2 H. Bl. 553; Blanchard v. Russell, 13 Mass. 1; Walsh v. Farrand, Id. 19; Van Raugh v. Van Arsdaln, 3 Caines, 154; Smith v. Smith, 2 Johns. 235; Proctor v. Moore, 1 Mass. 198. Many of the cases cited by the plaintiffs' counsel rest on this foundation, and in this view are susceptible of the most satisfactory vindication.

It is very certain, that discharges under bankrupt acts are not the only exceptions or bars founded on local laws, which are held good in every foreign tribunal. From the reason of the thing many other local defences must be held of equal validity. Chief Justice Parker in his very elaborate opinion in Blanchard v. Russell, 13 Mass. 1, lays it down as a rule affecting all personal contracts, that they are subject to all the consequences attached to contracts of a similar nature by the laws of the country, where they are made, if the contracting party is a subject or resident in that country, where it is entered into, and no provision is introduced to refer it to the laws of any other country. He excepts from the rule cases, where the laws sought to be enforced are unjust or injurious to our own citizens. Within the terms of the rule thus laid down, a bar of the statute of limitations would be included, for it is a consequence attached to the contract in the place, where it is made. I am persuaded, however, that this case was not at the moment in the mind of the learned judge, and that the language used by him ought to be interpreted with reference to the case of insolvency, which was then before him. Emerigon lays down a rule somewhat more precise. He says: "Pour tout ce qui concerne l'ordre judiciare, on doit suivre l'usage du lieu ou l'on plaide. Pour ce qui est de la décision du fonds on doit suivre en regle générale les lois du lieu où le contract à été passe." He then cites a passage from the civil law, "ex consuetudine ejus regionis, in quâ negotium gestum est;" and then adds: "Cette distinction est consignée dans tous nos livres. In his quae respiciunt litis decisionem servanda est consuetudo loci contractûs. At in his quae respiciunt litis ordinationem attenditur consuetudo loci ubi causa agitur." 1 Emerig. p. 122, c. 4, § 8. It has been supposed, that by the expression, "la decision du fonds," (literally the decision of the grounds

or essential points of the suit) Emerigon meant the decision upon the "merits" of the suit. If by "merits" be intended a defence founded in general justice, or going to the essence and obligation of the contract, in contradistinction to a defence standing upon the text of positive law, it appears to me, that the interpretation is too narrow. But if by a decision upon the "merits" be intended a defence forming a perpetual bar of the suit, in contradistinction to a mere dilatory or temporary plea, such as a plea in abatement, there is no reason to contest the interpretation. It appears to me, that Emerigon uses the expression in this latter sense, as equivalent to the phrase, "litis decisionem," which obviously embraces any defence forming a perpetual bar to the suit. 1 Emerig. pp. 125, 126, c. 4, § 8. In this view it would embrace statutable bars, such as that of prescription or the statute of limitations, as well as those resting on the general nature and conditions of the contract.

Take the case of a former judgment between the parties upon the same subject matter of contract. If the plaintiff again attempt to sue upon the same contract in a foreign court, would not the exceptio rei judicatae in the domestic court be a good bar for the defendant? I take it to be generally admitted as a conclusive bar to repel a new suit in a foreign country, whatever may be the differences among nations as to the conclusiveness of foreign judgments in a suit brought to enforce them. Kaimes, Eq. p. 369, c. 8; Ersk. Inst. bk. 4, p. 800, tit. 3, § 4; Poth. Obl. pt. 3, c. 8, art. 1, § 640; Id. pt. 4, c. 3, § 3; Id. arts. 1–3, § 37. If we suppose, that the judgment in the domestic forum was given upon a statutable bar, specially pleaded, as upon the statute of limitations, then we have a case, in which under the shape of an exceptio rei judicatae the domestic prescription is enforced in a foreign forum. But it has been said, that the bar of rei judicatae is admitted to be conclusive in all foreign courts upon the ground of public utility, because there should be some means to put a final issue to controversies, otherwise litigation would be perpetual. Kaimes, Eq. p. 369, c. 8. This is certainly true; and it is curious enough, that the decisions stop far short of the principle; for foreign judgments of dismissal of suits are held conclusive, and no evidence is admitted to contradict them; and so of other judgments set up as bars to new suits; but if a former judgment is sought to be enforced by a new suit, it is no longer conclusive in favor of the plaintiff. The principle, too, of the conclusiveness of the exception of rei judicatae applies to statutes of limitations. They are emphatically called statutes of repose, made to cut off stale demands, and to shelter parties from fraudulent claims after a long lapse of time, when the evidence is no longer within their reach.

In their very theory they purport to afford positive presumption of payment and extinction of contracts according to the laws of the place, where they are made. Pothier says, although pleas in bar (of prescription) do not extinguish the claim in rei veritate, yet they cause it to be presumed to be extinguished and discharged, while the plea in bar exists. "Outre cela quoique les fins de non-recevoir n'eteignent pas in rei veritate la creance, neánmoins elles la font présumer éteinte et acquittée, tant que la fin de non receivoir subsiste." And he puts a strong case, where in a suit brought he admits, that a claim so barred cannot be a set off, and gives the reason, "car la fin de non recevoir que subsiste contre ma creance opere la presomption de l'extinction de ma creance." Poth. Obl. pt. 3, c. 8, art. 1, § 677 (642). He adds also that from the principle, that the plea in bar, while it subsists, causes the claim to be presumed to be extinguished, it follows also, that one would ineffectually become a security for a claim, which is already barred. Kaimes, Eq. pp. 363, 364, c. 8, § 6; Ersk. Inst. bk. 3, pp. 633, 634, tit. 7, § 48; Voet ad Pand. lib. 44, tit. 3, § 10. This presents the nature of the presumption in a strong light; and other distinguished jurists admit the same reasoning. Kaimes, Eq. p. 364, c. 8, § 6. Lord Kaimes says, "when a process is brought in Scotland for payment of an English debt, after the English prescription has taken place, it cannot be pleaded here, that the action is cut off by the statute of limitations; but it can be pleaded here, and will be sustained, that the debt is presumed to have been paid. Considering that the statute can have no authority here, except to infer a presumption of payment, it follows, that the plaintiff must be permitted to defeat the presumption by positive evidence, or to overbalance it by contrary presumptions, or to show from the circumstances of the case, that payment cannot be presumed." Now, in the first place, if the statute of limitations does create, proprio vigore, a presumption of the extinction or payment of the debt, which all nations ought to regard, it is not easy to see, why the presumption of such payment thus arising from the lex loci contractus should not be as conclusive in every other place, as in the place of the contract. It may be admitted, that it might be repelled by any circumstances, which would constitute a good replication to the bar in the country of its origin. But why the parties should be permitted to escape from the conclusiveness of the presumption of payment, which their own laws have made, simply because they are in a foreign country, requires some farther explanation. Payment, or extinction, according to the laws of the place of the contract, is payment or extinction of the debt every where. Why not, then, the presumption of payment or extinction. conclusive every where else, when it would be conclusive at home? Why

should a difference be made between the fact, and that, which the law deems conclusive evidence of the fact? What is there in the principles of national comity, which forbids us to bind the parties by a rule or a prescription, which the laws of their country have made conclusive between them? If a foreign prescription may be given in evidence, as proof of payment, why may it not be pleaded directly as a positive bar?

It is certain, that what would be evidence of a contract in the place where it is made, is admissible to prove it although contrary to the local regulations of the forum, where it is sought to be enforced. Emerigon puts a case in point. Two Englishmen litigated in a cause pending in France, the one prayed to be allowed to prove by witnesses the loan of a sum exceeding 100 livres; the other excepted against it, the 54th art. of the ordinance of Moulins. It was adjudged by the parliament of Paris, that the ordinance did not apply, inasmuch as it goes ad litis decisionem. Emerigon considers this question as to proof, as "pour le decision du fonds," and therefore, "on se reglera par les loix du lieu de contrat," it is to be regulated by the laws of the place of the contract. 1 Emerig. pp. 125, 126, c. 4, § 8. If the article of Moulins had been incorporated into the English law, the objection would have been fatal. Why? Because the law of the place had made it indispensable as evidence of the contract in its original concoction? Why not then apply the same rule as to statutes, which conclusively presume the extinction of the contract?

But it is argued, and has often been argued, that statutes of limitation belong to the regulations of process in every state, and limit the judicial order of proceedings in their courts. To use the expression of Emerigon, they are said to belong "à l'ordre judiciare." This is true as to such statutes regulating remedies exclusively in the courts of a state. But is this the whole effect of such statutes generally? Is this the whole effect of statutes of limitations, purporting on their face to extinguish all right of action in perpetuity, upon contracts made in a country, without reference to any particular court, in which the action may be brought? Statutes of limitation may be so framed, as merely to apply to the jurisdiction of a court. They may prohibit such court from taking cognizance of an action, unless brought within a limited period after the right has accrued. Such statutes, properly and emphatically belong to the regulation of judicial proceedings. Statutes of limitation may, on the other hand, declare, in terms, that contracts not sued for within a limited period shall be held to be utterly extinguished. Such statutes are a complete extinguishment or discharge of a contract, and constitute an universal bar, as much as a discharge under a bankrupt law. Such statutes constitute bars ad litis decisionem; they go à la déci-

sion du fonds. Statutes of limitations may proceed in an intermediate course. They may declare, that no action shall be brought upon contracts made within a state, unless within a limited period. In this last case, if they are directory to courts of justice, as to the sustaining of suits, they are properly deemed a regulation of the judicial proceedings in such courts. If, on the other hand, they are considered as defences, or bars, authorized to be made by the debtor, and at his option, they are not otherwise a regulation of judicial proceedings, than any other legal bar set up by the debtor. They authorize a judgment of the court in his favour, as a perpetual bar of any suit. They literally go, therefore, ad litis decisionem. Now the prescriptions of the French law are pleas in bar, which ought to be pleaded by the debtor, and the court cannot supply them (Poth. Obl. pt. 3, c. 8, art. 1, § 679); and in general, the same is true as to our statutes of limitations of personal contracts. They must be pleaded by the debtor, otherwise they are not available in his favor. These are, in my view, important distinctions, which have not hitherto sufficiently attracted attention. The defence, in such case, is given to the debtor against any action after the limited period. When that period is passed, if the parties are still within the state, all right of action is extinguished; and I can perceive no reason, why the right to use that defence, good by his own laws, should not travel with the debtor into every other country. The policy of it is as strong, as that of the rule of the exceptio rei judicatae. It is to put an end to litigation, and to save persons from continual exposure to stale demands.

The leading argument against this doctrine, however, is, that statutes of limitation extinguish the remedy only, and not the right, upon contracts. Let us not deceive ourselves; there is no magic in words. Is the proposition, thus laid down, true to the extent, which the purpose, for which it is introduced, requires? The distinction between a right and a remedy is admitted. But can a right be truly said to exist upon a contract, when all remedy upon it is legally extinguished? Suppose a judgment has passed upon the plea of prescription to a contract in favor of the defendant; there is a perpetual bar of remedy; but could it be said, that the right upon the contract still subsists? The supreme court of the United States, has recently said, in a very elaborate opinion delivered by the chief justice, "the distinction between the obligation of a contract and the remedy given by the legislature to enforce that obligation, has been taken at the bar, and exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified, as the wisdom of the nation shall direct." Again: "Statutes of limitation relate to the remedies, which are furnished in the courts. They rather establish, that certain circum-

stances shall amount to evidence, that a contract has been performed, than dispense with its performance. If, in a state where six years may be pleaded in bar to an action of assumpsit, a law should pass, declaring that contracts already in existence, not barred by the statute, should be construed to be within it, there would be little doubt of its unconstitutionality." Sturgis v. Crowninshield, 4 Wheat. [17 U. S.] 122, 200, 207. And why, may it be asked? Because it takes away all remedy upon the contract, and thereby destroys its obligation. In the opinion of the supreme court, in the case then in judgment, the insolvent laws of states, which absolved the person and future property of the debtor from the contract, impaired its obligation, and were therefore unconstitutional. A statute, therefore, that takes away all remedy upon a contract, cannot be truly said not to affect the right, or obligatory force, of such contract. What is the right of a contract, when the remedy is extinguished in perpetuity? That a debt, barred by the statute of limitations, is not so utterly gone, as that it may not be revived by a new promise, is admitted. And in this respect, it is exactly in the same predicament, as a debt discharged by a certificate of bankruptcy. The right is just as much extinguished in the one case as in the other, and no more. Indeed, a discharge in bankruptcy is but an extinction of all future remedy against the person and effects of the debtor. Pothier, alluding to the bar of prescription, says, that it does not extinguish the debt, but it renders it ineffectual, by not permitting the creditor to bring the action, which results from it; that, while it subsists against any debt, it operates as a presumption of the extinction of the debt; but, he adds, that payment by the debtor, is, notwithstanding, valid, since the debt is not extinguished. Poth. Obl. pt. 3, c. 8, art. 1, § 676. It is obvious, from the whole scope of the observations of Pothier, that he means no more, than that the prescription does not extinguish the claim, if the debtor does not interpose it as a bar; and that a voluntary payment cannot be recovered back, since it is but a waiver of the bar, which the debtor had a right to plead. Strictly speaking, in Pothier's view, a prescription is not per se an extinction of the remedy, but only at the option of the debtor. He asserts, that the plea of prescription ought to be interposed by the debtor; and cannot be supplied by the judge. Id. This is perfectly reasonable, and conforms to the doctrine of the common law, as to the like plea in personal actions. Every one is at liberty to waive a rule or law, introduced for his benefit.

The distinction, which is here alluded to, between the absolute extinction of a debt, and the positive presumption of its extinction, which the law allows to the debtor, and which becomes absolute, when the prescription is pleaded by him, is just in itself. It proceeds upon the ground, not of a strict legal right in the creditor, which he may enforce against the will of the debtor, but upon the notion, that there still exists, notwithstanding the statutable prescription, a moral obligation, binding in foro conscientiae, which, if recognized by the debtor, or discharged by him, repels any imputation, that the transaction is a nude pact without consideration. Payment, therefore, by the debtor, once made, cannot be recalled, for it is an equitable and honest act, and founded in moral obligation. But still there is not, strictly speaking, any right in the creditor to claim payment, for the law has made the bar, if pleaded, an estoppel of the right. Such right is technically extinguished in contemplation of law by the presumption of extinction, until the debtor himself negatives the presumption, by some act or admission. This view is not opposed by Voet, or D'Aguesseau, in the passages cited at the bar. Voet says: "Prescriptioni effectus est, quod jure Romano naturalem obligationem extra omnem juris effectum constituat, licet eam non tollat ipso jure. Unde et obligationi ita praescriptae regulariter neque fidejussor nec pignus accedere potest. Quod ipsum jus de non admittendis pro debito praescripto fidejussoribus aut pignoribus, moribus hodiernis magis obtinet, quia placuit, per praescriptiones ipso jure perimi, quae subfuerant, obligationes." Voet ad Pand. lib. 44, tit. 3, § 10. Now there can be no legal right, where the natural obligation of the contract is gone, or is without any effect. D'Aguesseau observes: "Toute prescription suppose deux choses; l'une que celui, qui prescrit, demeure defendant debiteur du droit, qui'l veut eteindre par la prescription; l'autre, que celui, contre lequel on prescrit, est en état d'agir et d'interrompre la prescription." D'Aguesseau, ouvres de. tom. 5, p. 374. The learned author certainly admits, that the prescription extinguishes the right, if the debtor avails himself of it; and that the creditor is only in a situation to defeat the prescription, if the debtor does not use it.

It is plain, therefore, that when the remedy is said to be extinguished by a prescription, and not the right, we are not to understand the term "right," in its technical legal sense, but merely as a moral obligation and claim in natural justice. In the common law, a right always supposes some mode, by which it can be enforced. It may be by action, or by entry, or retainer. But it is always contemplated by law, that there is some mode, by which it may legally be enforced. Generally speaking, it is used as a phrase less extensive than that of title; and is applied to cases, where a right of action subsists. Co. Litt. 345a, 345b; Sheppard's Epitome, Droit, p. 466. A person's estate is therefore often said to be turned to a right, when it can be recovered only by an action, as in cases

of descents after a dis-seisin, where, as Lord Coke says, jus descendit et non terra. Co. Litt. 345b. And I am not aware, that in any exact legal sense a right can be said to subsist upon a contract, where the law has taken away all the power of enforcing its obligation by any remedy.

The cases already cited, with reference to the effect of discharges under laws of insolvency and bankruptcy, proceed upon this distinction. Where the insolvent laws merely discharge the person, leaving the effects, future as well as present, liable for the debt, the discharge cannot be pleaded as a bar to any action in a foreign court. The reason is, that there remains some remedy; there is not a total, but a partial extinction of remedy; it is gone in personam, but not in rem. But where the effects, as well as the person, are discharged, as in cases of bankrupt laws, there the discharge is held a universal bar; and the reason is, that it extinguishes all remedy of every kind, and consequently, in a legal and exact sense, all right. Now it seems to me, that the doctrine here proceeds upon a plain principle. Where the lex contractus leaves any right of action, foreign courts may enforce that right, according to their own local remedies and modes of proceeding. Where no right of action subsists by the lex contractus, foreign courts do not enforce the original obligation, because it is gone, and to enforce it, would be to create a new obligation, and not to recognize a subsisting one. Now this is precisely the case in respect to statutes of limitation of the lex loci contractus, where they have actually and completely run against a contract. The laws extinguish the remedy in every form, at the option of the debtor; and this right, or presumption of extinction, ought to go with him every where, and to be recognized every where. If it be said, that the remedy being gone does not by the lex loci extinguish the right, I would ask, how that position is made out. It is precisely like the case of bankruptcy. The bar in the latter case is a more positive bar; it does not, and cannot, suppose a real satisfaction of the debt, for then payment might be pleaded. The contract may be revived by a new promise, and it rests in the option of the debtor to plead it or not. It runs, therefore, in a perfect parallel with the case of the statute of limitations; and is not distinguishable from it, except that in the one case, all remedy is extinguished after the lapse of a certain time, and in the other, immediately upon the operation of the law upon the case of bankruptcy. The doubt, which I ventured to throw out in the case of Van Reimsdyk v. Kane [Case No. 16,871], as to the distinction between them, asserted by the current of authorities, still remains with me; and I am not yet able to perceive, that the distinction is in principle sound.

The doubt, which still presses on my mind, and the reasoning, which has been suggested in aid of that doubt, are not without countenance from civilians, and seem at least, in times past, to have divided their opinions. I do not know that Casaregis has given any express opinion. After having adverted to the common distinction between the construction of contracts, and the mode of proceeding judicially to enforce them, he says: "Cui distinctio adstipulatur altera, quod, aut disseritur de qualitatibus et conditionibus contingentibus in ipso contractu et tempore contractus, prout in presenti, et tunc inspiciendus sit locus contractus; aut de qualitatibus contingentibus post contractum ex negligentis vel mora et tunc inspiciendus sit locus, ubi illa mora contracta est." Casaregis, Disc. p. 179, § 60. It is not quite clear, what defence or delay, which should bar the right, is here alluded to; but he seems to consider generally, that if by such negligence or delay the contract be once gone by the lex loci, it affects the contract every where. There is certainly an obscurity in the phraseology, which does not permit us to reason with perfect certainty as to his views. Domat says, "a creditor loses his debt for having omitted to demand it within the time limited by prescription, and the debtor is discharged from it by the long silence of his creditor." 1 Domat (Strahan's Translation, Ed. 1737) bk. 3, p. 464, § 4, art. 1. And again, "there is yet another use of prescription, in which possession is not necessary, which is that of annulling the rights and actions, which one has ceased to exercise during a time sufficient for prescribing. Thus a creditor loses his debt and all rights and actions are lost, although those, who are debtors, possess nothing, if a demand is not made of the debt, or if one ceases to exercise his right during the time regulated by law." Id. bk. 3, p. 466, § 4, art. 10. This language is exceedingly strong and direct, and shows that Domat contemplates, that the right to the debt in a legal sense is lost by the prescription, and this not in a particular place, for he annexes no qualification, but generally; in other words, that it is legally discharged. Erskine in his Institutes (Ersk. Inst., Ed. 1812, bk. 3, tit. 7, § 48) says, "if in the case of an English debt, which is in their law limited to a short prescription, but not in ours, an action shall be brought in Scotland, by the creditor, for payment after the years of the English limitation shall have elapsed, the English statute, which is of no proper authority in the courts of Scotland, cannot be regarded as an extinction of the claim. Nevertheless, it ought in equity to be regarded as a presumption, that the debt is paid, if the creditor shall not elude it either by direct evidence or contrary presumptions. It is hard to quote any decisions of our supreme court, in support of what has been observed on this head, to which contrary decisions may not be opposed. But these and other rules relating to it are laid down with great pre-

-cision, and the contrary judgments censured by the author of the Principles of Equity. Kaimes, Eq. bk. 3, c. 8, § 6. By the latest -decision, the court of sessions "have made the law of Scotland, the rule of their judgment." Thus far the text. And the editor -of the last edition states, "the same has since been repeatedly found, and cites the -cases. It is to be observed, however, he adds, that in all these cases, the debtor had left England within the period of the statutory -limitation, so that the court had no other rule than the Scots' prescription to go by. In two still later cases, in 1786 and 1792, which he cites, the Scots' prescription was finally overruled. So that it would seem by the latest Scotch decisions, the prescription -of the lex contractus, and not that of the lex fori, is now the established rule. After such a variety of fluctuating decisions at a bar and bench so distinguished for learning and talent and discrimination as those of Scotland, one may venture to maintain, that all reasoning and principle are not necessarily -on one side of this question, without the imputation of extreme rashness of assertion.

If, therefore, the question were now entirely new, and I were called upon to settle it upon principle, I confess, that the inclination of my own mind, would strongly lead me to adopt the following propositions. 1. That wherever a right to a debt exists by the lex loci contractus, although a remedy in personam be taken away, that right may be enforced in a foreign tribunal by any remedy, which its own modes of judicial proceeding authorize, and exclusively by such remedy. 2. That where all remedies are barred, or -discharged by the lex loci contractus, and have operated on the case, there the bar may be pleaded by the debtor in a foreign tribunal, to repel any suit brought to enforce the debt. 3. That where all remedies are barred by the lex loci contractus, there is a virtual extinction of the right in that place, which ought to be recognized in every other tribunal, as of equal validity. 4. That if the prescription by the lex loci contractus be longer than that of the lex fori, the latter may be pleaded in bar to a foreign contract, if it applies to foreign contracts; and that this does not on principle suppose, that the foreign prescription may not also be a well founded bar to the suit.

But I do not sit here to consider, what in theory ought to be the true doctrines of the law, following them out upon principles of philosophy and juridical reasoning. My humbler and safer duty is to administer the law as I find it, and to follow in the path of authority, where it is clearly defined, even though that path may have been explored by guides, in whose judgment the most implicit -confidence might not have been originally reposed.

It does appear to me, that the question now before the court has been settled, so far as it could be, by authorities, which the court is bound to respect. The error, if any has been committed, is too strongly engrafted into the law, to be removed without the interposition of some superior authority. Besides the incidental recognitions already referred to in other writers, Huberus and Voet speak strongly on the point. The former puts this example: "Frisius in Hollandia debitor factus ex causâ mercium particulatim venditarum, convenitur in Frisia post biennium. Opponit praescriptionem apud nos in ejusmodi debitis receptam. Creditor replicat, in Hollandia, ubi contractus initus erat, ejusmodi praescriptionem non esse receptam, proinde sibi non obstare in hac causa. Sed aliter judicatum est, &c. Ratio haec est, quod praescriptio et executio non pertinet ad valorem contractus sed ad tempus et modum actionis instituendae," &c. 2 Huberus, lib. 1, p. 540, tit. 3, § 7. It is true, that Huberus here applies his doctrine to the case of a prescription of the lex fori, (as to which, I entirely agree with him); but it is apparent from the whole scope of his reasoning in his celebrated chapter de conflictu legum, that he meant to exclude the application of the prescription of the lex loci contractus. Voet is more direct: "Si praescriptioni implendae alia prefinita sint tempora in loco domicilii actoris, alio in lobo ubi reus domicilium fovet, spectandum videtur tempus, quod obtinet ex statuto loci, in quo reus commoratur." Voet ad Pand. lib. 44, tit. 3, § 12. He does not put the case of the prescription of the place of the contract, but of the plaintiff's domicil; but it is fairly to be presumed, that he supposed them to be in the same predicament. Lord Kaimes, as we have already seen, asserts the doctrine in the most explicit manner. These opinions are certainly of great weight, and probably indicate the doctrine predominating among civilians. We may now look to the decisions at the common law. In the case of Williams v. Jones, 13 East, 439, the question was directly made at the bar. Lord Ellenborough, in pronouncing judgment, adverting to the argument, said, "It is said that parties, who have contracted abroad, return to this country with the same rights only, which they had in the country, where they so contracted; and, generally speaking, that is so; that is, if the rights of the contracting parties be extinguished by the foreign law, upon the happening of certain events. But here, there is only an extinction of the remedy in the foreign court, according to the law stated to be received there, but no extinction of the right; and there is no law or authority for saying, that where there is an extinction of the remedy only in the foreign court, that shall operate by comity as an extinction of the remedy here also. If it go to the extinction of the right itself, the case may be different." The case, however, finally turned upon another point, viz. that it was within the saving of the statute of limitations. But the general doctrine stated by Lord Ellenborough is ful-

ly recognized by all the other judges, and puts an end to the question, at least in England.

Then come the decisions in our own courts. One of the earliest cases is Nash v. Tupper, 1 Caines, 402, where to an action on a note, the plea of the statute of limitation of six years of New-York, (where the suit was brought) was pleaded, and the plaintiff replied, that the contract was made in Connecticut, where the limitation was seventeen years. Upon demurrer to the replication, the court held it bad, and the plea in bar good, and referred to an earlier case, where the same point was decided. Mr. Justice Livingston dissented from this judgment in an opinion expressed in his usual clear and forcible manner, and illustrated his views on the general question with a cogency of argument and learning, which in my humble judgment are not easily answered. This decision was confirmed in Ruggles v. Keeler, 3 Johns. 263, and the point directly adjudged, that the statute of limitations of a foreign state could not be set up as a bar to a set off, founded on a contract executed in the foreign state. The facts were special, and did not necessarily require a decision of the point in its most general shape. The action was on a note given by the defendant to the plaintiff Keeler, (as it should seem in Connecticut); it was not negotiable, but was assigned to one Walker, in Connecticut, and there certain services were performed, and goods sold, by the defendant to Walker, while he was owner of the note. The suit was brought in the plaintiff's name for the benefit of Walker. It was, therefore, a case, where the set-off might be justly considered as intended by the parties as an equitable concurrent discharge of the note. It fell, therefore, precisely within the doctrine asserted by Pothier. "If, says he, my debtor of a sum of money, before the time of the prescription against my claim was accomplished, and consequently before the plea in bar was acquired, had become my creditor of a like sum of money, and afterwards, since the time of prescription against my claim was accomplished, should demand the payment of his; although I should not be allowed to bring an action against him for mine, I should be allowed to oppose it to him as a set-off (compensation) against his. This is according to the maxim of the doctors, 'quae temporalia sunt ad agendum perpetua sunt ad excipiendum.' The reason is, that the set-off (compensation) is made of full right, from the time that your claim and mine, which was not yet prescribed, were mutually set off and extinguished." Poth. Obl. pt. 3, c. 8, art. 1, § 677. However, the court decided the question upon the broad ground, stating that statutes of limitations are municipal regulations, founded on local policy, which have no coercive authority abroad, and with which foreign or independent governments have no concern. The lex loci applies only to the validity or interpretation of contracts, and not to the time, mode or extent of the remedy. Mr. Chancellor Kent has in a very recent case sustained and explained the reasoning of this decision in a very elaborate manner, and has pressed into its service, with his accustomed diligence, a mass of exact authority. Decouche v. Savetier, 3 Johns. Ch. 190, 218, &c.

The case of Pearsall v. Dwight, 2 Mass. 84, decided by the supreme court of Massachusetts, is directly in point. There the defendants pleaded the statute of limitations of New-York to a contract made in New-York. The court held the plea bad; and Chief Justice Parsons, (himself a great authority,) in delivering the opinion of the court, said, "the law of the state of New-York will therefore be adopted by the court, in deciding on the nature, validity and construction of this contract. This we are obliged to do by our laws. So far the obligation of comity extends, but it extends no farther. The form of the action, the course of judicial proceedings, and the time, when the action may be commenced, must be directed exclusively by the laws of this commonwealth."

It appears to me, that these authorities are too stringent and obstinate to be easily resisted. I confess myself unable to resist the conclusion, that they demonstrate the present question to be entirely at rest in the principal state tribunals, where the parties dwell, and by whose laws they are to be governed. I feel myself, therefore, constrained to say, that the plea in bar is bad, and must be overruled.

There is another objection to the plea, (independent of the general ground) which has been already alluded to, and which, if that ground were untenable, might well induce a question of the validity of the plea. It is, that the statute of limitations of New-York does not appear to have run against the action, while the parties were citizens of that state. But it is unnecessary to dwell on this objection, as the plea cannot otherwise be sustained. Plea adjudged bad.