## The Inhabitants of RAYNHAM *versus* The Inhabitants of CANTON.

In a question of the settlement of a female pauper, depending on the validity of her marriage, the pauper and her supposed husband are competent to testify concerning the marriage.

In such a case proof of a marriage *de facto* in another State is sufficient to throw the burden of proof on the party impeaching its validity. *Semble.*

A statute of another State, or its repeal, cannot be proved by parol evidence.

A book purporting to contain the statutes of any one of the United States and to be printed by its authority, is *primâ facie* evidence of the written law of such State. *Aliter* of a printed book of statutes of a foreign nation. *Semble.*

THIS was an action of *assumpsit* brought to recover a sum of money expended by the plaintiffs for the support of three paupers, namely, Elizabeth Wentworth and her two children.

The cause was tried in the Court of Common Pleas, before *Williams* J., upon the general issue.

The plaintiffs proved that one John Wentworth was an inhabitant of Canton, and contended that Elizabeth was his lawful wife; which was denied by the defendants. The plaintiffs exhibited a certificate, that the marriage was not

---

Raynham
*v.*
Canton.

recorded where it was alleged to have taken place, and then called the pauper to give evidence respecting the supposed marriage. To this the defendants objected, but the evidence was admitted.

The defendants then offered to give in evidence the declarations of John Wentworth respecting the supposed marriage, but his declarations were excluded. He had been summoned by the plaintiffs to give evidence, but he did not appear in court.

The marriage was alleged to have taken place in the State of Rhode Island, in January 1817, and in the course of the trial the requisitions of the law of Rhode Island with respect to marriage came in question. The defendants offered in evidence a volume of the laws of that State, purporting to be published by authority of the General Assembly in the year 1798. The plaintiffs denied that the law in that volume was the law of Rhode Island at the time of the supposed marriage, and the court did not permit the book to be used in evidence. Peter B. Hunt, a sworn attorney of the courts of Rhode Island, was then called by the plaintiffs to testify as to what the law of that State required in 1817, to make a marriage valid. The defendants objected to his testifying, but the objection was overruled. The court then permitted the book before mentioned to go to the jury, with the testimony of Mr. Hunt as to his understanding of the actual law of Rhode Island touching the solemnization of marriages.

The jury returned a verdict for the plaintiffs; whereupon the defendants filed exceptions to the foregoing decisions of the court.

*Nov. 17th.*    *W. Baylies, Parsons* and *Russell* in support of the exceptions. In England the pauper's testimony as to her marriage would be admissible; *Rex* v. *Bramley,* 6 T. R. 330; but not so in this State. There fornication, or even adultery, is not punishable in the courts of common law; here a woman who has cohabited with a man cannot be asked the question whether they were married, for an answer in the negative would expose her to a criminal prosecution.

As the woman's testimony, in other words, her declarations were admitted, the declarations of John Wentworth (which

were made before the dispute arose, though that fact is not expressly stated in the bill of exceptions) should also have been received. *Berkeley Peerage case*, 4 Campb. 401, and 3 Stark. Evid. 1104. [*Parker* C. J. Must not the person whose declarations are received, be dead, or incompetent to testify, &c. ?] In *Reed* v. *Passer*, Peake's Cas. 231, it does not appear that the person was not living. Here the man, for the reason before given in regard to the woman, was incompetent to testify, and his declarations therefore should have been admitted.

The statute book offered in evidence, purporting to have been printed by authority of the State of Rhode Island, was admissible by itself. *Kennebeck Prop.* v. *Call*, 1 Mass. R. 483 ; *Thompson* v. *Musser*, 1 Dallas, 462 ; *Poindexter* v. *Barker*, 2 Haywood, 173 ; *Biddis* v. *James*, 6 Binney, 321 ; *United States* v. *Johns*, 4 Dallas, 415. The repeal of the statute produced must have been by a written law, and could not be proved by parol evidence, but only by the production of the repealing statute. *Church* v. *Hubbart*, 2 Cranch, 236 ; *Livingston* v. *Maryland Ins. Co.* 6 Cranch, 280 ; *Boehtlinck* v. *Schneider*, 3 Esp. R. 58 ; *Kenny* v. *Clarkson*, 1 Johns. R. 386 ; Peake's Evid. (Norris's ed.) 55. The witness was called, not only to show that the statute was repealed, but also to show what was the law of marriage in Rhode Island in 1817. His testimony was in fact his construction of the statutes.

*H. Cushman*, for the plaintiffs, being directed by the Court to confine himself to the last objection, observed that as a marriage *de facto* in Rhode Island was proved, the burden was on the other side to show that it was invalid. It appeared at the trial that there had been a revised edition of the laws of Rhode Island, printed subsequently to the volume produced, so that this volume did not afford a presumption of what was the law of marriage in 1817. Not being authenticated by a certificate of the secretary of that State, it was only a species of parol evidence, and the testimony of Mr. Hunt was properly admitted to control it. But if his testimony was improperly received, the verdict ought not therefore to be set aside since the defendants did not prove by legal evidence the in

Raynham
v.
Canton.

296

Nov. 18th

validity of the marriage. He referred to some of the authori-
ties before mentioned, and cited also *Frith* v. *Sprague*, 14
Mass. R. 455 ; *Buttrick* v. *Allen*, 8 Mass. R. 273 ; *Young*
v. *Bank of Alexandria*, 4 Cranch, 384.

PARKER C. J. We think the testimony of the woman
was properly received. It is admitted that according to the
law of England it should be received, but it is contended that
fornication being here a punishable offence, the law is differ-
ent as to the competency of the guilty parties to testify. But
this would make no other difference than that the woman called
may refuse to answer. If she makes no objection, then her
liability to punishment and desire to screen her reputation are
things which affect her credibility only.[1]

The declarations of John Wentworth were rightly rejected,
since he might have been produced on the trial. It was said
that his declarations should be opposed against the declarations
of the woman ; but that would be letting his simple declara-
tions go against hers made under oath.

With respect to the rejection of the book offered in evi-
dence, we concur with the courts of Pennsylvania and some
other States, and the court of the United States, in holding that
a volume purporting on the face of it to contain the laws of a
sister State, is admissible as *primâ facie* evidence to prove the
statute law of that State.[2] It certainly is the best evidence
next to an exemplification or authenticated copy, to require
which would put the citizens to an unnecessary burden
and expense. It is better evidence than the testimony of
any individual who may know the general purport of the law,
but cannot carry in his mind so minute a knowledge as
may sometimes be necessary in the application of such law.

---

[1] See *Carnaghan's case*, 6 Rogers's Rec. 45; *Southard* v. *Rexford*, 6
Cowen, 254; *Parkhurst* v. *Lowton*, 2 Swanston, 215; Burr's Trial, 245;
1 Stark. Evid. (5th Amer. ed.) 165 to 173; *United States* v. *Craig*, 4 Wash.
C. C. R. 729; *Johnston* v. *Goss*, 2 Yerger, 110; Roscoe's Dig. Crim. Evid.
129 to 135.

[2] Confirmed, Revised Stat. *c.* 94, § 59. In England the law of France as
to marriage may be proved by the production of a printed book, purporting
to contain the code of France, and proved by parol testimony to contain
the law of that country. *Lacon* v. *Higgins*, 3 Stark. R. 178; *S. C.* Dowl.
& Ryl. N. P. Rep. 38.

The distinction between written and unwritten law in regard to the manner of proving them, is very sensible. Common law may be considered as custom, which may be proved by parol ;[3] indeed there is no other way of proving such law, unless by reports , but in some countries there are no reports. Written law of all civilized countries exists in records and may be proved with certainty. In case it appeared that a foreign statute could not be procured, properly authenticated, then perhaps oral evidence of the law might be admissible.[4]

In England it does not seem to be settled, that printed books of foreign laws are to be received in evidence, and we do not mean to decide that the law of any country merely foreign may be so proved. But the connexion, intercourse and constitutional ties which bind together these several States, require that this species of evidence should be sufficient until contradicted.[1]

Then the question will arise, how shall it be contradicted. Certainly not by the testimony of one who may have merely resided a short time in the country, nor by that of any citizen or subject ; for there is no fact which it would be more difficult to establish by such evidence.

The law being proved to have existed, in the manner above

297

---

[3] Confirmed, Revised Stat. c. 94, § 60. The usual course is to make such proof by the testimony, under oath, of competent witnesses instructed in the law. Story on Conflict of Laws, 530. See *Haven v. Foster*, 9 Pick. 130 ; *Rex v. Wakefield*, cited in 2 Russell, 624 ; *Douglass v. Forrest*, 4 Bingh. 699 , *Talbot v. Seeman*, 1 Cranch, 12, 38 ; *Church v. Hubbart*, 2 Cranch, 237 ; *Strother v. Lucas*, 6 Peters, 763 ; *Dalrymple v. Dalrymple*, 2 Haggard Consistory Rep. *Append.* 15 to 154 ; *Frith v. Sprague*, 14 Mass. R. 455 ; *Hill v. Packard*, 5 Wendell, 375 ; *Brackett v. Norton*, 4 Connect. R. 517 ; *Hempstead v. Reed*, 6 Connect. R. 486 ; *Denison v. Hyde*, 6 Connect. R. 508 ; *Middlebury College v. Cheney*, 1 Vermont R. 336 ; *Dougherty v. Snyder*, 15 Serg. & Rawle, 87 ; *Ripple v. Ripple*, 1 Rawle, 386 ; *Le Roy v. Crowningshield*, 2 Mason, 151 ; 2 Stark. Evid. (5th Amer. edit.) 331, notes ; Roscoe's Dig. Crim. Ev. (Amer. edit.) 138, n. (1).

[4] See Revised Stat. c. 94, § 61.

[1] See *State v. Stade*, 1 Chipman, 303. In *Craig v. Brown*, 1 Peters's C. C. R. 352, it was held, that printed statute books not authenticated by the seal of the State, are not admissible evidence in any other State. This decision has been followed in North Carolina. *State v Twitty*, 2 Hawks, 441 ; 1 Stark. Ev. (5th Amer. edit.) 176, n. (2). But see Revised Stat. of Mass. c. 94, § 59.

Raynham
v.
Canton.

stated, it must be presumed to exist until proved by as good evidence to have been repealed. Now we think it difficult, if not impossible, to do this by oral evidence. Laws are sometimes repealed by implication. Sometimes an act purporting to repeal, leaves some of the former acts in force. Questions of construction arise, and the law is to be ascertained not only by the words, but by reference to the subject matter, preexisting laws, &c. We think therefore that the Court of Common Pleas erred in rejecting the book. It is true it was afterwards admitted, but accompanied by the testimony of Mr. Hunt; it should have been admitted free of his testimony.

It is said on behalf of the plaintiffs, that a marriage *de facto* being proved, it should be presumed to be according to the laws. And this appears to be reasonable. As if a marriage were proved to have taken place in France, for instance, it should seem fit to require the party who denies the marriage to prove its invalidity. Still however in the case before us the law was in question, and it is proper that there should be a new trial.

*New trial granted.*