**ALBANY,**
Jan. 1831.

Lincoln
v.
Battelle.

</div>

Judgment for plaintiff.

## LINCOLN vs. BATTELLE.

Where a person is employed by an *agent*, he may call upon the *principal* for payment for the services rendered ; and he may do so, although he knows that the agent has charged the demand to the principal, and received the amount, unless he has agreed to discharge the principal, and rely upon the responsibility of the agent.

A law of a foreign state, authorizing proceedings calling on creditors to present their demands against a debtor by a specified day, and declaring the effect of omission to be, not only to take away the remedy, but to extinguish the debt, will be considered, where there is *no insolvency* and *no surrender of property*, in the nature of a *statute of limitations*, affecting the *remedy* and not the *validity* of the contract.

A plea of the *statute of limitations* of the state where the contract is made, is no bar to a suit brought in a foreign tribunal to enforce the contract ; but a plea of the statute of limitations of the state where the suit is brought, is a good bar.

The *written* or *statute laws*, and judicial records of a foreign state, must be proved by documents properly authenticated, under the seal of the state, or a *sworn copy* must be produced.

ALBANY,
Jan. 1831.

Lincoln
v.
Battelle.

The public *seal of a state,* affixed to the exemplification of a law or judicial proceeding, *it seems,* proves itself; it is matter of notoriety, and will be taken notice of as part of the law of nations acknowledged by all.

Under a *commission to take testimony,* the depositions of witnesses will be received in evidence, although the oaths to the witnesses were not administered by the commissioners, if it appears that they were prohibited from administering them, and they were in fact administered by the local authorities.

THIS was an action of assumpsit, tried at the New-York circuit in October, 1829, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The plaintiff claimed to recover the balance of an account for wages or salary, as manager or overseer of certain estates of the plaintiff, in the island of St. Croix, and produced an account, certified as just, by *Thomas Battelle,* as attorney for the plaintiff, on the 27th July, 1821, shewing a balance in favor of the plaintiff of 10,000 *pieces of eight,* equal to $6,400. *Thomas Battelle* was the agent of the defendant, and employed overseers in the management of her estates. The defendant admitted, when called on for payment, that he was her agent or attorney, at the time he certified the account, and was authorized to give such certificate, but she refused to pay the account, alleging that he had charged the plaintiff's claim in his accounts with her, and that the same had been settled.

On the part of the defendant, a deposition of Thomas Battelle, the agent of the defendant, taken under a commission, was offered in evidence, the purport of which was, that at the time he gave the certificate, the plaintiff, as he supposed, was perfectly satisfied that he would pay him what was his due; that in his accounts with the defendant he had charged her with the balance certified as due to the plaintiff, and that such accounts were settled; that the defendant had reason to believe that he had paid the plaintiff's salary, although he had not, in fact, done so; that the plaintiff, no doubt, knew that the defendant had been charged with his salary, and made no objections thereto. The evidence was objected to, and rejected. The defendant's counsel also offered in evidence a deposition of one *Guysbert Behagen,* taken under the same commission, the purport of which was, that on

the 19th December, 1823, the defendant obtained a *royal grant* from the king of Denmark, for the purpose of *calling in*, by *proclama*, all persons having any claims or demands against her or her estate; that a *proclama* was accordingly issued, and published in all the courts and gazettes, as prescribed by the grant, which expired, with regard to creditors residing within the Danish West India colonies, on the 16th May, 1824; and with regard to creditors residing elsewhere, on the 27th July, 1825; that the plaintiff not having produced his claim within the period stated in the *proclama*, forfeited the same forever, according to the strict letter of the grant, *subpœna prœclusi et perpetui silentii*; which, in its effect on the rights of parties not having presented their claims, and obtaining the same signed and approved within the limited time, not only takes away the *remedy* but *annuls* and extinguishes the debt itself, so that it cannot be recovered in any court of Denmark or its colonies or dependencies, under any circumstances whatever. This evidence was also objected to, and rejected. A copy and notarial translation of the *proclama* were annexed to the deposition of *Behagen*, and he testified that the same were duly authenticated according to the laws of the island; that the signatures and seals thereto were genuine; that the persons whose names are subscribed are officers, and that full faith and credit would be given to the document thus authenticated in the courts of Denmark. The defendant's counsel offered to read the *proclama* thus verified to the jury, but was not permitted so to do. On the offering of these depositions, a preliminary question arose as to the regularity of the execution of the commission : it appeared that the depositions were sworn before the *court* of the island, because the authorities of the place prohibited the commissioners from administering the oaths; the commissioners, however, were present when the judge administered the oaths. It was objected that the depositions should have been sworn to *before the commissioners*, but the judge overruled the objection, and the depositions were offered in evidence. The defendant's counsel excepted to the decision of the judge, rejecting the testimony offer-

ALBANY,
Jan. 1831.

Lincoln
v.
Battelle.

ed by him.  The jury found for the plaintiff, and the defend-
ant now moves for a new trial.

*B. F. Butler,* for defendant.  The royal grant and the
proceedings under it, extinguishing the demand of the plain-
tiff, and discharging the defendant from liability, the evi-
dence offered was admisssble under the *general issue.*  1
*Chitty's Pl.* 419.  1 *Saund. on Pl. and Ev.* 168.  3 *East,*
367.  5 *Taunton,* 558.  Had the *remedy* only been affected,
considering the grant in the nature of a statute of limita-
tions, the defendant would not have been entitled to give
the evidence offered without a plea, because the plaintiff
might have shewn himself excepted from its operation, or
might have replied a new promise.  The contract was *dis-
charged* by the law of the place where it was made, and can
be enforced no where.  4 *Cowen,* 511, 514, 515, *n.*  The
proceedings under the royal grant, it is to be presumed, were
in conformity to the ordinary course of legal proceedings in
the island of St. Croix, and a *discharge,* according to the
law of the place of the contract, is conclusive in all places.
1 *Gallison,* 68, 371.  3 *Wash. C. C. Rep.* 17.  2 *id.* 157.  3
*id.* 313.  This case is distinguishable from those of *Pren-
tiss* v. *Savage,* 13 *Mass. R.* 20, and *Tappan* v. *Poor,* 15 *id.*
419, where the discharges were held invalid, on the ground
that from the short notice given, they could not have been
intended to operate upon *foreign creditors.*  Here the inten-
tion to affect persons abroad is explicitly declared, and there
can be no exception to the length of notice.  The objec-
tion to a law impairing the obligation of contracts, can-
not be urged in opposition to the defence, that being a
restriction only upon our state legislatures; for it has
been said that the congress of the United States may pass
a law having such effect.  1 *Peters' C. C. R.* 337.  The
legal presumption is, that the discharge was in conformity
to the established law of the place, existing at the time of
the making of the contract; but if it were otherwise, if it was
a special act of the king, it is obligatory upon the plaintiff,
who was domiciled there, and therefore cannot complain.
Denmark is an absolute monarchy; the will of the sovereign

is the law of the land, and as to the policy or justice of the act, we have no right to call it in question. Besides, the proceeding is analogous to the practice of our courts of equity, allowing an executor to call in creditors to present their demands. The testimony of Battelle should have been received, as it proved that the credit was given to him as the agent, and not to the defendant as principal; where such is the case, the principal is not liable. 3 *East*, 147.

*H. Bleecker*, for the plaintiff. The commission was not properly executed. No one but a commissioner could administer the oaths to the witnesses. Such is the practice in chancery, from whence the proceeding is derived. The oaths in this case were administered by an officer unknown to our laws.

The evidence offered does not disclose the nature of the royal grant, on which the alleged discharge was founded, whether it was a special act of the sovereign assuming the character of a law, or the commencement of a course of judicial proceedings according to the established law of the land. If it was in itself a law of the land, it should have been exemplified, or proved as laws of foreign states are required to be proved. 2 *Wendell*, 411. If a judicial proceeding, the evidence applicable to records ought to have been given. There was no legal evidence of any proceeding whatever, except the *proclama*. The parol proof of the law of Denmark was inadmissible and insufficient, the witness not pretending to be conversant with the law of the place. The royal grant cannot be considered in the nature of an insolvent law; there is no *cessio bonorum*, no provision for creditors, 2 *Cowen*, 626; it is more like a statute of limitations, and should receive that construction; and if so, it can have no effect here. 1 *Caines*, 402. It manifestly was a special act, and the discharge being obtained under it, it cannot be considered as having entered into the contemplation of the parties, at the time of the making of the contract as an existing law, and therefore cannot affect it. The injustice of this discharge is as great as in the cases cited from *Massachusetts*; for although a long time was given for

foreign creditors to come in, there is no probability of notice having reached them. The evidence of Battelle, if received, would not have proved that the plaintiff relied upon the responsibility of the agent; the account itself, certified by him, shews the contrary.

*Butler*, in reply. The witnesses being sworn in the presence of the commissioners, is equivalent to the oath being administered by them. It cannot now be objected that the proceedings, under which the discharge was obtained, were not proved as judicial records, such objection not having been made at the trial. Nor, for the same reason, can it now be urged that the witness was not conversant with the laws of Denmark. The answer to the argument, that the grant should be considered only as a statute of limitations, is the proof that it destroyed not only the remedy, but extinguished the debt.

*By the Court*, SAVAGE, Ch. J. The defence in this case was placed on two grounds: 1. It was insisted that the defendant was discharged from liability, on the ground that the plaintiff having dealt entirely with T. Battelle, the defendant's agent, he had looked to the agent's responsibility, and not to the defendant; 2. That the defendant had been legally discharged from the payment of this debt, by virtue of a royal grant of the king of Denmark, and of the proceedings under it. Both branches of the defence rest upon the proof contained in the deposition of witnesses, taken under a commission in the island of St. Croix. It appears by the commission and return that the witnesses were sworn, not by the commissioners, but by the local authorities, in the presence of the commissioners. The plaintiff, on the trial, objected to the reading of the depositions on that ground, but they were received, and it is now objected preliminarily, that the depositions not being sworn before the commissioners, should have been rejected. The witnesses were sworn before the court of the island, because the authorities of the place prohibited the commissioners from administering the oaths. It is true, that so far as respects this cause, the commissioners had power to administer oaths, and the testimony thus taken

is competent; but if a witness thus sworn, should swear falsely, he probably would escape punishment. He could only be punished by the laws of the country in which the oath was administered; and if by the laws in force in St. Croix, the oath before the commissioners was unauthorized and extra-judicial, perjury could not have been committed. It seems to me, therefore, that the manner of administering the oath was not objectionable, as it was the only way in which it could be done.

The commission was issued by consent, and was executed subject to all just exceptions. On the trial, the plaintiff objected to such parts of the deposition of T. Battelle, as went to shew that Mrs. Battelle had accounted with him for the plaintiff's salary; and that the plaintiff knew that the salary was so charged. Thomas Battelle was the authorized agent of the defendant; as such he employed the plaintiff, and *in that character* he settled the account. It is clear, therefore, that the plaintiff gave credit to the defendant, and *not* to her agent. The defendant might have shewn, if in her power, that the contract between the plaintiff and her agent was made by the agent on his own account and responsibility; but that was not attempted. The defendant being liable to the plaintiff, it was totally immaterial to him whether the salary was included in the accounts between the defendant and her agent. It was her folly to avow it to her agent until he produced evidence of having paid it. The plaintiff was not responsible for the fidelity of the defendant's agent. Suppose the plaintiff knew that Battelle had received his salary from the defendant, that did not discharge the defendant's liability to the plaintiff, unless he had agreed to discharge her and rely on the personal responsibility of the agent. This is not shewn either by the deposition of J. Battelle, or by the accounts. The agent had previously paid the salary; the defendant could not do it in person, as she was abroad; but if she had been at home, she might have chosen to transact her business by an agent; and so long as the plaintiff received his salary it was immaterial to him who paid it. The course of dealing proves nothing, if the plaintiff did no act relinquishing the defendant's liability. The very last

transaction shews that the plaintiff and **T.** Battelle consider-ed the defendant the responsible party.    The account is stated by **T.** Battelle, not in his individual character, but as attorney to the defendant, who was the owner of the estates of which the plaintiff had been overseer.

T he next question is whether the testimony of Behagen was admissible, to prove the *proclama* issued by the king of Denmark and the proceedings under it.    The *proclama* was preceded by a *royal grant*, which must be considered as a law of the kingdom of Denmark, *or* as a judicial proceed-ing.    However repugnant to our notions of justice and lib-erty such arbitrary proceedings are, we are to regard them as the acts of the government, and they must be proved as such.    That the laws of a foreign country must be proved, must be considered well settled.    In *Fremoult* v. *Dedin,* 1 *P. W.* 431, Lord Chancellor Parker held that the laws of Holland must be proved.    *Peake's Cases,* 18.    This has been often so decided, and is not disputed; but the manner of proof is the point now particularly requiring attention. In *Boehtlinck* v. *Schneider,* 3 *Esp.* 58, it was decided by Lord Kenyon that the laws of a foreign country must be proved by documents properly authenticated from that country. This is undoubtedly correct as to the written or statute laws : the unwritten laws must also be proved as facts; but that proof may be by parol.    The language of Chief Justice Mar-shall, in *Church* v. *Hubbart,* 2 *Cranch,* 236, has been cited in this court by Mr. Justice Sutherland.    6 *Cowen,* 429. " Foreign laws are well understood to be facts which must, like other facts, be proved to exist, before they can be re-ceived in a court of justice."    " The rule," he says, " is ap-plicable to them, that the best testimony shall be produced ; and that such testimony as presupposes better testimony at-tainable by the party, shall not be received, but no testimony shall be required which is shewn to be unattainable.    They should be authenticated by the authority of the foreign state under its seal ; or it should be shewn that such evidence could not be procured."    A sworn copy seems to be considered also competent testimony ; but a copy certified by a *consul,* has been held to be insufficient.    It was said on the argu-

ment, and I think with propriety, that foreign laws must be proved like private acts. Public laws of our own state are permitted to be read from the statute book, not because that is evidence, for no evidence is necessary, as the judges are presumed to know the law, but the book is read to refresh their memory. Lord Ellenborough so decided in *Clegg v. Levy,* 3 *Campb.* 166. The law being in writing, an authenticated copy ought to be produced. 2 *Starkie's Ev.* 568, 9. The cases in our own court are to the same effect. In *Kenney v. Van Horne,* 1 *Johns. R.* 394, Spencer, justice, takes the distinction between the common law of a foreign country and its statutes; the one may be proved by parol, the other not. In *Smith* v. *Elder,* 3 *Johns. R.* 105, the point was raised and argued. There *Reeve's Law of Shipping* was read to shew what was the statute law of Great Britain relating to the revenue. The court do not say what was proper evidence of the law, but they impliedly say the book was not sufficient, for they rely upon the fact that the defendant had concluded himself, by confessing that the goods were shipped contrary to the laws of the country to which they were sent. A similar decision was made in *Packard* v. *Hill,* 2 *Wendell,* 411, that the statute of a foreign country must be proved by an exemplification. In *Consequa* v. *Willings,* 1 *Peters' C. C. R.* 229, Washington, J. says, the written or statute laws of foreign countries are to be proved by the laws themselves, if they can be procured; if not, inferior evidence of them may be received. *See also* 1 *Phil. Ev.* 443.

Assuming the law to be, that all written laws of a foreign country, as well as proceedings of courts, must by proved by documents duly authenticated, let us examine the testimony offered to prove the royal grant. Mr. Behagen swears that he knew that such grant was issued, and that all necessary notices were given. This is clearly inadmissible; it supposes better testimony in existence, not produced nor accounted for. A royal grant must have been the act of the government, and entered of record. The officer having custody of the records could give an exemplification, authenticated under the seal of state; or a sworn copy might have been produced. Parol evidence is therefore inadmissible.

ALBANY,
Jan. 1831.

Lincoln
v.
Battelle.

Mr. Behagen further testifies, that the copy and notarial translation of the *proclama* annexed to his deposition, is duly authenticated according to the laws of St. Croix ; and that full faith and credit would be given to such authentication in the courts of Denmark. By the proceedings of the special *town court* of Christianstadt, in the island of St. Croix, held before the deputy judge and recorder, it appears that the original royal grant and the *proclama* were produced in court, and that it was shewn that they were recorded and published according to the laws of Denmark. Mr. Behagen who appears to be an attorney, swears, that the papers attached are copies of the originals ; what he calls the original is but a copy of the record, and the paper produced is therefore a copy of a copy. This does not seem to me to amount to evidence of a sworn copy of the record. The reason of receiving an exemplification or sworn copy is, that the court has testimony under oath ; in one case there is the official certificate of an officer acting under an oath of office, in the other there is an oath proving the correctness of the copy. In *Delafield* v. *Hand*, 3 *Johns. R.* 310, this court held that a paper purporting to be an exemplification of certain proceedings of a tribunal at Havre, without any other evidence of their authenticity than what appears from the papers themselves, was not admissible ; but that it must be proved as a fact, and subject to the same rules of evidence. The testimony of witnesses proving the seal of the court, and the signature of the judge, are sufficient to admit the exemplifications, 7 *Johns. R.* 519 ; and it seems from the same case that proof of the seal alone is sufficient ; see also *Peake's Ev.* 48 ; but the public seal of a state proves itself ; it is matter of notoriety, and may be taken notice of as part of the law of nations, acknowledged by all. *Peake*, 48, *n.* 3 *East*, 222, *n. See also* 4 *Dall.* 416. The proceedings of a court of admiralty are sufficiently proved by the seal of the court, the certificate of the judge, and the certificate of a notary, that the person certifying as judge, is so in fact, 5 *Cranch*, 335 ; though, in this case, there was other proof of the judge's acts in that capacity. In the case under considera-

tion, the notarial certificate only proves the correctness of the transaction.

But if I am wrong in this view of the case, then it becomes necessary to inquire what is the effect of this grant, and of the proceedings under it. The *proclama* called upon all persons having or pretending to have any demands against the defendant, to present them by a certain day, or be precluded thereafter from asserting the same. Mr. Behagen swears, that the effect of omitting to present the demand within the time specified, is to extinguish the debt. By this I cannot understand that this proceeding operates in any other manner than as a statute of limitation ; there was no insolvency, no surrender of property, nothing but a mere limitation. The distinction between the *lex loci* and *lex fori* has often been adverted to, and it is well settled that the law of the place *is to govern all questions* affecting the nature, validity, construction and effect of a contract; but the law of the place, where a contract is sought to be enforced, is to govern as to the remedy. Most of the cases on this subject have been collected in a learned note to *Andrews* v. *Herroit*, 4 *Cowen*, 508. It is also well settled that a statute of limitations affect only the remedy, and not the validity of a contract. Mr. Justice Story has recently discussed the subject with great ability, and comes to the conclusion, that if the question were entirely new, he would adopt this among other propositions : " That when all remedies are barred by the *lex loci contractus*, there is a virtual extinction of the right in that place, which ought to be recognized in every other tribunal, as of equal validity ;" but he admits the law to be otherwise, and decided that a plea of the statute of limitations of the state where the contract is made, is no bar to a suit brought in a foreign tribunal to enforce that contract ; but a plea of the statute of limitations of the state where the suit is brought, is a good bar. 2 *Mason*, 151. The point is at rest in this state. 1 *Caines*, 402. 3 *Johns. R.* 263. 3 *Johns. Ch. R.* 190, 218. The cases of *Prentiss* v. *Savage*, 13 *Mass. R.* 20, and *Tappan* v. *Poor*, 15 *Johns. R.* 419, were cases of discharges under insolvent laws of other states, and held to be inoperative beyond those states. The

comity of nations does not require that effect should be given to their laws which affect the remedy upon a contract, but only that the same law shall be applied as to the construction and effect, as in the state where the contract was made, and is to be executed. Neither ground of defence being tenable, the motion for a new trial must be denied.

<div align="right">New trial denied.</div>