### SAWYER, WALLACE & CO. v. MACAULAY.

1. To permit this court to consider alleged errors of the Circuit judge in omissions to charge, it is absolutely necessary that the "Case" should show that he was requested so to charge.
2. The "Case" is the source of information for this court, and alleged errors which are not there disclosed cannot be considered.
3. Under the law of North Carolina, which makes an endorser a surety, unless it be otherwise clearly expressed, an endorsement for collection only, without change of ownership, does not make such endorsers co-sureties with their prior endorser for value.
4. It is too sweeping a proposition that notes are illegal if they "arose directly or indirectly out of transactions in futures," and the Circuit judge committed no error in refusing so to charge.
5. Where the brief does not give the judge's charge to the jury, a detached fragment of the charge separated from its context cannot be held by this court to be erroneous.
6. Action on a note executed and payable in North Carolina is not barred in this State within the six years here allowed, although the limitation of actions as there prescribed is for a shorter period. The statute of limitations is applied according to the *lex fori*.
7. Ownership of a note alleged in the complaint and admitted in the answer, could not at the trial be questioned upon proof of an endorsement by plaintiffs to their attorneys for collection.

---

Before COTHRAN, J., March, 1882.

Action commenced February 5th, 1881. The opinion states the case.

*Mr. S. P. Hamilton,* for appellant.

*Mr. T. C. Gaston,* contra.

February 16th, 1883. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON.    This was an action on three notes executed by Stenhouse, Macaulay & Co., merchants doing business in Charlotte, N. C.    The first was executed on July 28th, 1876, to the plaintiffs and payable at Merchants and Farmers National Bank, Charlotte, eighteen months after date. The second was dated October 24th, 1877, executed by the same parties and payable at the same bank, and the third bore date October 25th, 1877, executed by same parties and payable at same bank.    All three of the notes were endorsed by the defendant by simply placing his name, "D. Macaulay," on the back of each.    Each note also had the following endorsement by the plaintiffs: "Pay to J. H. McAden, president, or order. Sawyer, Wallace & Co."    This endorsement, at the trial, had on each been canceled by pen marks drawn through them; also on each was found at the trial, "Pay Patterson & Gaston, or order, for collection.    Sawyer, Wallace & Co."    Patterson & Gaston were the attorneys who brought the action in the name of the plaintiffs.

At the close of plaintiffs' testimony, the defendant moved for a non-suit on the ground that, it appearing that the notes had been endorsed to Patterson & Gaston, the plaintiffs were not entitled to sue.    The judge refused this motion, holding that plaintiffs having alleged ownership in their complaint, and this not being denied in the answer, the ownership must be taken as admitted.    The verdict was for the plaintiffs, the amount of the notes, to wit, $1,720.62.

The defendant is now before this court upon six exceptions, four of which assign error in the refusal of the judge to charge certain propositions; the fifth, because his Honor did not allow J. E. Stenhouse, one of the firm, to testify as to the character and business of buying and selling futures and the custom of trade in connection with such transactions generally, and the sixth, because his Honor erred in not deciding that the note for $645.10 (the first note mentioned), being barred in North Carolina before the commencement of this action, the plaintiffs could not recover; and, also, in arrest of judgment, because the three notes being endorsed by Sawyer, Wallace & Co., the plaintiffs,

to Patterson & Gaston, for collection, the plaintiffs could not maintain an action in their own names as owners and holders.

As to the first four and sixth exceptions, which involve errors of omission to charge, we do not find anywhere in the " Case " or " Brief" that the questions there raised were brought to the attention of the judge by request to charge. This, under our decisions, was absolutely necessary so as to permit this court to consider them, and especially does it become the duty of the court to deny consideration when the objection is interposed by the respondent claiming his legal rights. In *Madsden* v. *Phœnix Fire Ins. Co.*, 1 *S. C.* 29, Mr. Justice Willard said : " The third ground of appeal is insufficient so far as it is based upon the failure of the judge to charge certain propositions therein set forth for want of a request to charge, as was the case in reference to the second ground. If counsel desire to bring any view of the law of a case to the attention of the jury, they must make such view the subject of a request to charge, and, failing in this, they cannot allege error. The maintenance of this rule is essential to a correct and careful administration of justice when the appellate court is limited to a consideration of exceptions on points of law, and cannot look into the whole case to see that substantial justice has been done between the parties."

In *Abrahams* v. *Kelly and Barrett*, 2 *S. C.* 238, the same justice, speaking for the court, said : " It does not appear that the second proposition was brought to the notice of the Circuit judge at the trial. It was not touched upon in the charge, nor was there any request to charge made in respect to it. The presiding judge is not bound to submit any particular proposition of law unless his attention is called to it and a request made to that effect. However important to the case such a proposition may be, error cannot be alleged unless, after request, he has refused to submit it. Nor is a misstatement of the law error unless his attention is called to it and he neglects or refuses to correct it. It is the office of exceptions to bring before this court only such matters of law as were the subject of contest upon the trial."

In *Fox* v. *Railroad Co.*, 4 *S. C.* 543, it was held that a failure

2K

to charge a particular proposition of law could not be assigned as error unless the judge on request declines so to charge, and the court said, when such an objection is insisted upon on behalf of the respondent, the court must necessarily regard it.

The same principle was held and enforced in the late case of *Sullivan* v. *Jones*, 14 *S. C.* 365, where Mr. Justice McIver said: "All of these grounds except the first, second and third complain of omission to charge upon points which, so far as the 'Case' discloses, were not brought to the attention of the judge during the trial, either by request to charge or otherwise, and therefore are not properly before us."

Neither do we find anything in the "Case" to sustain the fifth exception. If the presiding judge limited or curtailed J. E. Stenhouse "in his testimony as to the character and business of buying and selling futures, or the custom of trade in connection with such transactions generally," the "Case" submitted fails to show it and it is not admitted by respondent. In fact it is denied in respondent's argument. The only statement we have is found in the exception raising the question. This the court cannot regard. The "Case" is the source of our information as to what occurred below; its very object is to inform the court authoritatively of the legal questions contested below, and of the facts pertaining thereto. This court has held that as to these matters it confines itself to the "Case." *Sheriff* v. *Welborn,* 14 *S. C.* 480. And it cannot consider statements in exceptions not found in the "Case." The defects in an appeal herein are fatal, especially where the respondent not only fails to admit the statements in exceptions, but denies their existence and demands the legal consequences applicable.

The court, however, could not but regret that an appeal should terminate in this way if there was merit therein which, if otherwise presented and in accordance with the rules in such cases, might have been successful. We have therefore, *ex gratia,* considered the exceptions so far as to be satisfied that no injustice will be done, or the rights of parties lost or defeated by enforcing the principles which the cases cited require.

The first two exceptions complain that the presiding judge failed to charge that under the law of North Carolina, where

the notes were executed, D. Macaulay, the defendant, and Sawyer, Wallace & Co. were joint sureties by virtue of the endorsements made respectively on said notes, and therefore no action could be sustained by the plaintiffs against defendant, except for his aliquot portion of the amount paid by plaintiffs. The statute of North Carolina referred to, provides that "whenever any bill or negotiable bond or promissory note shall be endorsed, such endorsement, unless it shall be otherwise plainly expressed therein, shall render the endorser liable as surety to any holder of such bill, bond or promissory note, and no demand on the maker shall be necessary previous to an action against the endorser; provided, that nothing herein shall in any respect apply to bills of exchange, inland or foreign." The character of the endorsements by these parties has already been stated. The endorsement of the defendant was his name on the back without more; that of the plaintiffs was a direction to pay the president of the bank at which the notes were made payable, which was afterwards canceled.

While no doubt the act above referred to made the defendant a surety to the makers, dispensing with notice of demand, we do not think it had this effect upon the plaintiffs. The character of their endorsement excludes this idea, and, in the language of the act, "otherwise plainly expresses" its purpose. The notes were payable at the bank of which McAden was president, and the object of the plaintiffs' endorsement was to enable Mr. McAden to collect them. There was no evidence that they were discounted by the bank, or that the ownership was ever changed. It would have been error therefore for the judge to have charged as suggested.

The third exception assigns error, "because his Honor refused to charge that if the jury believes the cause of the losses which are the consideration of the notes, arose directly or indirectly from the transactions in futures, such transactions are illegal and the plaintiffs cannot recover, and that he did charge that contracts in futures, so called, may be legitimate." Even upon the assumption that contracts in what are known in commercial circles as "futures" are illegal, as gambling transactions or against public policy, or violative of the North Carolina act of

1788, yet the judge could not have legally charged in the broad terms indicated in this exception, that if the notes arose "directly or indirectly," &c.   This would cover any and all connection, the most immediate as well as the most remote, the guilty as well as the innocent.   This would have been too sweeping.

As to the latter part of this exception, "that the judge did charge, that contracts in futures, so called, may be legitimate," we do not know in what connection this was said.   The charge of the judge is not set out in the case, either in whole or in part, and in the absence of explanation or connection, and all information as to its application, it would be unjust to the Circuit judge for this court to attempt to pass upon a detached fragment of his charge like this.   Besides, the necessary information is not before us.   We do not intend, however, to intimate that contracts based on the sale or purchase of futures, would be legal.   But we do not think that this distinct question has been sufficiently raised in this case to authorize us to consider it, and therefore it has not been adjudged.

The fourth exception involves a question of fact, to wit, the force and effect of testimony, which was a matter for the jury and not the judge.

As to the fifth, as has been stated, we are not informed of the precise ruling of the judge upon this subject; nor does the " Case" show what connection a general history " of the character and business of buying and selling futures, and the custom of trade in connection with such transactions," had with the case at bar.   The object of testimony is to evolve facts pertinent to the issue in contest, and within the knowledge of the witness as applicable thereto.   How far the general business of buying futures was involved in this case, we can not tell, and, if involved, whether Mr. Stenhouse was a sufficient expert to be authorized to speak generally upon the subject, we are not informed.   We must leave this exception, therefore, as we find it.   Any special fact bearing on the case and within the knowledge of Mr. Stenhouse, he was competent to prove, but testimony by him on the subject of futures and the usage and custom of trade therein " generally," it appears to us would have been irrelevant.

Sixth. "Because his Honor erred in not deciding that the note for $645.10, being barred in the statutes of North Carolina before the commencement of this action, the plaintiffs could not recover on the third cause of action." Even if the proposition of law contained in this exception was correct, yet the judge before charging it was required to assume that the facts upon which it rested had been proved. This he could not do, as the facts are alone for the jury. But is the proposition a sound one? In *Levy* v. *Boas,* 2 *Bail.* 217, the court held generally, that the limitation of actions is of the *lex fori,* not of the *lex loci contractus,* and in that case where the debt had not been barred in Pennsylvania, the place of the contract, yet in this State where the period of limitation was shorter, that period having elapsed, it was held barred. We can see no reason, where the facts are reversed, why the same rule should not prevail. The underlying principle is that the *lex fori* shall govern as to the remedy and its enforcement, and if in either case the *lex fori* is invoked, the same principle should control.

If the statute paid or destroyed the debt, then when once barred in any State, it would be gone forever and in all places; but this is not the theory of the statute of limitations. It does not pay the debt; it only suspends the remedy. This may take place in one State, while in another the active energy of the remedy may not be impaired in the least. The case of *Morton & Co.* v. *Naylor,* 1 *Hill* 439, does not touch the question. There the point was as to the effect of a judgment in another State, whether it could be regarded in this State as a debt of record, and, like judgments here, not subject to the plea of the statute. The court held that it would rank here in that respect as in the State where obtained, and if the statute could not be pleaded there it could not here.

Mr. Angell on Limitations, page 69, section 65, says: "Equally well settled is the doctrine that remedies on contracts are to be regarded and pursued according to the law of the place where the action is instituted, and not by the law of the place where the contract is made." He states further that upon the question being made before Lord Ellenborough, in *Williams* v.

*Jones,* 13 *East* 439, that learned jurist said : " It is said that
parties who have contracted abroad return to this country with
the same rights only which they had in the country where they
are contracted, and, generally speaking, that is so—that is, if
the rights of the contracting parties be extinguished by the for-
eign law by the happening of certain events.   But here there is
only an extinction of the remedy in the foreign court according
to the law stated to be received there, but no · extinction of the
right ; and there is no law or authority that where there is an
extinction of the remedy only in the foreign court, that shall
operate by comity as an extinction of the remedy here also.   If
it go to the extinction of the right itself, the case may be dif-
ferent."

Mr. Justice Story, in *Leroy* v. *Crowninshield,* 2 *Mason* 151,
stated the inclination of his mind to be the other way, on the
supposition that where the debt was barred by the *lex loci,* this
amounted to a virtual extinction of the right in that place, which
ought to be recognized in every other tribunal as of equal
validity ; but this learned judge admitted that the current of
authority was too strong against him to be resisted.   In *Town-
send* v. *Jemison,* 9 *How.* 407, found cited in a note to Angell,
page 76, the question underwent thorough examination, with the
inclination of Judge Story's mind above referred to before the
court, and pressed upon it, the direct question being, whether the
cause of action having accrued in Mississippi and been completely
barred there, the bar of the Mississippi statute might not be
pleaded in a court of Louisiana.   The court said : " The rule
in the courts of the United States in respect to pleas of the stat-
ute of limitations has always been that they strictly affect the
remedy and not the merits."   See, also, *McElmoyle* v. *Cohen,* 13
*Pet.* 312.   Under these authorities it would have been error for
the Circuit judge to have charged as suggested in this exception.

As to the matter relied on in arrest of judgment, we are satis-
fied with the reasoning of the Circuit judge when he refused the
motion of non-suit made on the same ground at the trial.   The
ownership of the note was a question of fact ; this was alleged
in the complaint to be in the plaintiffs and not denied in the

answer; this, we think, was sufficient, and could not be overthrown by the qualified endorsement to the attorneys for collection.

It is the judgment of this court that the judgment of the Circuit Court be affirmed.